No. 23903.

Aspen Airways, Inc., a Colorado corporation *v.* Public
Utilities Commission of the State of Colorado and
Vail Airways, Inc., a Colorado corporation.

(461 P.2d 215)

Decided November 17, 1969.

JOHN F. MUELLER, KENNETH M. MACINTOSH, STOCKTON and LEWIS, JOHN H. LEWIS, for plaintiff in error.

JONES, MEIKLEJOHN, KEHL & LYONS, ALVIN J. MEIKLE-

John, Jr., T. Peter Craven, Schneider, Shoemaker, Wham & Cooke, Robert S. Wham, for defendant in error Vail Airways, Inc.

Duke W. Dunbar, Attorney General, Robert Lee Kessler, Assistant, for defendant in error Public Utilities Commission of the State of Colorado.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

In May of 1967, Vail Airways, Inc. (applicant) applied to the Public Utilities Commission (Commission) for an extension of their temporary Certificate of Public Convenience and Necessity which authorized the applicant to operate scheduled passenger service between Denver and Eagle, Colorado. As amended, the application requested authority to operate scheduled flights between Denver and Aspen, Colorado, with one stop service in Eagle. This application was opposed by Aspen Airways, Inc. (protestant) which holds a Certificate of Public Convenience and Necessity authorizing them to operate scheduled flights between Denver and Aspen.

A hearing was held before the Commission in which the protestant appeared in opposition to the application, and the Commission took the matter under advisement on September 14, 1967. On February 16, 1968, while a decision in this matter was still pending, the applicant petitioned the Commission for a temporary order permitting it to operate scheduled passenger service between Denver and Aspen for the alleged reason that protestant's service had become so inadequate that an emergency situation existed. The petition was supported by letters to the Commission from concerned persons. The Commission issued temporary authority to the applicant on February 20, 1968 without holding a hearing or giving the protestant a chance to appear before the Commission. On May 9, 1968, the Commission released its opinion approving the appli-

cation by Vail Airways, Inc. for one stop service between Denver and Aspen, and the temporary authority granted to the applicant was revoked as of that date. Protestant's petition for a rehearing was denied, and the district court, reviewing on a writ of certiorari, upheld the decision of the Commission.

The protestant argues that (1) the record of the hearing before the Commission does not contain sufficient, competent evidence to support the conclusion by the Commission that the service supplied to the public by the protestant between Denver and Aspen was inadequate; (2) even if the record could justify a finding of inadequate service, the Commission could not issue authority for additional air service without first giving the existing certificate holder, the protestant, a reasonable time in which to correct the inadequacies; and (3) the decision by the Commission was unfairly and illegally influenced by applicant's petition for a grant of temporary authority and the supporting letters filed during the time the application was under advisement. We do not agree with the contentions of the protestant, and we affirm the decision of the trial court.

I.

■ In order for the Commission to conclude that public convenience and necessity required additional scheduled air service between Denver and Aspen it was necessary for them to find that the present service supplied by the protestant was substantially inadequate. *Ephraim Freightways, Inc. v. Public Utilities Com'n.,* 151 Colo. 596, 380 P.2d 228. That finding is expressly stated in the decision by the Commission. As the trial judge correctly stated, the district court was limited in its review of the decision to determining whether the Commission regularly pursued its authority and whether the record supported findings of fact and conclusions of law made by the Commission. The same limitation applies to us on review here. *Ephraim Freightways, Inc. v. Public Utilities Com'n, supra.*

■ We conclude that the trial court was correct in deciding that the record contains sufficient, competent evidence to support the finding by the Commission that the service supplied by the protestant was substantially inadequate to meet the needs of the public. In reaching this conclusion, we first find that the facts relied upon by the Commission in reaching their decision are properly substantiated by the record. The Commission found that the traffic between Denver and Aspen has a peak season between December 14th and April 15th, and that the expected demands for air travel between Denver and Aspen during the impending peak season in 1967-68 would be greater than ever before. These facts are supported by testimony in the record and are not contested by the protestant.

■ The Commission further found that while the protestant had operated its schedules for the peak season in 1966-67 with two Douglas DC-3 aircraft with seating capacities of 26 each and one Fairchild F-27 with a seating capacity of 40 persons (38 persons after two seats were removed), that at the time of the hearing the F-27 had been leased out and would not be available in the coming season for use on scheduled flights by the protestant. Although the protestant indicated a willingness to obtain a comparable aircraft to make scheduled flights during the 1967-68 peak season, it had made no definite arrangements to do so. These findings of fact by the Commission are supported by testimony given by protestant's own witnesses and are not contested by the protestant. The Commission took official notice that at the time of the decision in May 1968, the protestant had not added such additional aircraft. This the Commission was entitled to do since the information appeared on the flight schedules prepared by the protestant and published as a matter of public record.

The finding by the Commission that the applicant had been called upon to fly regularly scheduled flights for the protestant during peak periods in 1967 is supported

by testimony and exhibits offered by protestant's own witnesses. The evidence was undisputed that since protestant had received a permanent certificate of public convenience from the Civil Aeronautics Board, federal regulations would not permit the applicant to fly any more scheduled flights for the protestant. The facts concerning high load ratios found by the Commission find their basis in testimony given by the Executive Vice-President and General Manager of protestant airline, as do the findings relating to protestant's failure to fly certain scheduled flights in June and July of 1967, its problem of occasionally having to cancel flights because of a lack of pilot hours, and its cancellation of scheduled flights without an official reason being given.

The finding by the Commission that mechanical trouble sometimes kept the protestant's aircraft from flying is supported by the exhibits and testimony from protestant's Director of Sales and Customer Service who testified that for 30 days prior to the hearing one of the DC-3s was grounded due to mechanical troubles meaning that during that time the protestant had no backup aircraft to use on scheduled runs. He testified that certain scheduled flights for the weekend prior to the hearing were cancelled because both DC-3s were grounded with mechanical difficulties. After reviewing the record, we cannot say that these findings of fact are not supported by competent evidence in the record.

We find also that the facts as found by the Commission provide sufficient support for the conclusion by the Commission that the service rendered by the protestant was substantially inadequate to meet the needs of the public.

The protestant argues that the Commission disregarded direct testimony from witnesses at the hearing that the service rendered by the protestant was adequate and satisfactory, and that such disregard is a denial of due process of law and renders the decision unjust and un-

reasonable. We do not agree that the Commission failed to consider and weigh all the evidence before them.

This is not a case where the Commission refused to admit evidence at the hearing which was properly admissible on the issues, and, therefore, *Donnelly Garment Co. v. National Labor Relations Board,* 123 F.2d 215, cited by the protestant, is not in point. Protestant's contention concerns evidence appearing in the record. In its recitation of facts, the Commission took full notice of those witnesses who testified that the service by the protestant was adequate and satisfactory. They also took notice of those who testified that the service was not adequate. The evidence of adequate service given by some individuals was not decisive of the issue of adequacy. This was merely a matter of weighing evidence given on both sides, and there is nothing to indicate that the evidence favorable to the protestant was not properly weighed and considered by the Commission.

The protestant further argues that the decision by the Commission was based upon a finding that there was sufficient passenger volume to support two airlines rather than on a finding of inadequacy in the existing service supplied by the protestant, and that the decision is, therefore, contrary to the policy of regulated monopoly in public utility regulation followed in this state. This contention does not find support in the decision of the Commission. The majority of facts recited in the decision pertain to the inadequacy of protestant's service rather than to the desirability of having competitive services.

Moreover, the Commission found, and the record substantiates such finding, that the new certificate would render Vail Airways only marginally competitive with Aspen Airways. As pointed out by the Commission, there is presently no aircraft service at all between Aspen and Vail which uses the Eagle airport, while an increasing number of passengers desire the availability of air transportation between these two highly publicized ski resorts. Moreover, Aspen Airways with its nonstop flight requires

only 45 minutes, whereas the one stop authority granted to Vail Airways would entail a flight time of at least one hour and ten minutes. The Commission pointed out that Vail would fly smaller planes than Aspen and drew the inference from this that passengers would generally prefer the larger planes if they could obtain passage on them.

■ From all these facts, the Commission found that Vail Airways would generally receive only such passengers as were overflow traffic which Aspen could not handle. The Commission has the expertise in such matters and we will not attempt to substitute our judgment for theirs.

## II.

■ The protestant contends that if the Commission properly found that the existing service supplied by the protestant was inadequate, then the protestant should have been given a reasonable time in which to correct the inadequacies before authority was issued to the applicant. We point out that the protestant did not raise this point in his Petition for Rehearing, but, in any event, we do not consider it mandatory to apply such a ruling under the circumstances of this case.

The protestant took an active role in the hearing on the application by Vail Airways, Inc. and was fully aware of the evidence presented to the Commission relating to the inadequacy of existing air service between Denver and Aspen. The protestant knew the concern of the Commission over the type and quantity of aircraft that protestant would use to operate its schedule during the imminent 1967-68 peak winter season.

From the close of the hearing on September 14, 1967 until the Commission issued the emergency temporary order to the application on February 20, 1968, the protestant had five months during which to correct the evidence of inadequate service and assure the Commission of its ability to handle the increased passenger load during the peak winter season. During this period the operations

of the protestant were free from any competition by the applicant. Instead of improving its service, the protestant operated its schedules without adding the additional aircraft which it had indicated to the Commission it would have in service during at least part of that time. This is in direct contrast to the situation in *Donahue v. P.U.C.*, 145 Colo. 499, 359 P.2d 1024, where this Court granted additional time to the existing certificate holder. There the ruinous and illegal competition already carried out by the carrier seeking a competing certificate was the reason the certificate holder was not in a financial position to correct the inadequacies.

III.

The protestant makes a general allegation that the decision by the Commission was influenced by the petition and letters received by the Commission relating to the granting of a temporary authority to the applicant. Where, as in this case, the hearing on the application was conducted before the protestant was subject to allegedly illegal competition and procedures, and the record of the hearing is sufficient to support the findings by the Commission, we cannot say as a matter of law that the Commission acted unfairly or illegally in granting the extended permit to the applicant. While the Commission did take official notice of the fact that the protestant failed subsequent to the hearing to add additional aircraft to its scheduled flights, the existence of that fact was not related to the petition for emergency authority since the petition was filed with the Commission on February 16, 1968 and the schedules reflecting the failure to add additional aircraft were published on or before November 1, 1967. We find nothing to substantiate the claim by the protestant that the decision by the Commission was unfairly influenced.

Whether the grant of temporary authority by the Commission was an illegal and unauthorized act, and whether the protestant may recover damages resulting

from such an act, are questions which we may not properly consider in our review of this case.

The judgment is affirmed.

Mr. Justice Groves not participating.